

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-13-00161-CR
_____

JERRY LEE CANFIELD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1317398R; Honorable Louis E. Sturns, Presiding

February 19, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Jerry Lee Canfield, was convicted by a jury of continuous sexual assault of a child (M.C.) and assessed a sentence of fifty years confinement.[1] By four issues, Appellant asserts the trial court erroneously admitted portions of the testimony

---

[1] TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014). A person commits the offense of continuous sexual assault of a child if, during a period that is 30 or more days in duration, he commits two or more acts of sexual abuse, and at the time of the commission of each act of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. An offense under this section is a felony of the first degree, punishable by imprisonment for life, or for any term of not more than 99 years or less than 25 years.

of (1) Jessica Canfield Killion, (2) Ronda Canfield, (3) Michael Canfield, and (4) Lindsey Dula. Specifically, Appellant contends their testimony concerning statements made by M.C. was inadmissible hearsay because those statements did not qualify as admissible outcry statements under the provisions of article 38.072 of the Texas Code of Criminal Procedure.[2] We affirm.

BACKGROUND

Appellant was charged by indictment of intentionally or knowingly committing two or more acts of sexual abuse of M.C., a child younger than 14 years of age, during the period from May 1, 2010 through August 31, 2010. Specifically, the indictment alleged Appellant committed aggravated sexual assault of M.C. "by causing the sexual organ of [M.C.] to contact the mouth of the defendant, and/or by causing the sexual organ of [M.C.] to contact the sexual organ of the defendant, and/or by causing the anus of [M.C.] to contact the sexual organ of the defendant." The indictment went on to allege Appellant also committed the offense of indecency with a child with intent to arouse or gratify the sexual desire of any person "by touching the genital of [M.C.] and/or by causing [M.C.] to touch the genitals of the defendant, and/or by touching the anus of [M.C.]." The indictment further alleged the statutory requirement that "at the time of the commission of each of these acts of sexual abuse the defendant was 17 years of age or older and [M.C.] was younger than 14 years of age."

---

[2] TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2014). Unless otherwise indicated, all future references to an "article" or "articles" are references to the Texas Code of Criminal Procedure.

On December 3, 2012, the State filed five separate notices, entitled *Notice of Outcry Pursuant to Article 38.072 CCP,* each naming one of the following witnesses: Ronda Canfield, Jessica Canfield,[3] Michael Canfield, Lindsey Dula, and Beth Hobbs. Each notice gave a summary of their proposed testimony concerning statements made by M.C.[4] In April 2013, a jury trial was held during which, among others, each of the following witnesses testified: (1) Ronda Canfield (M.C.'s great aunt), (2) Jessica Canfield (Ronda's daughter), (3) Michael Canfield (M.C.'s great uncle), and (4) Lindsey Dula (a forensic examiner who interviewed M.C.).

At trial, Jessica was the first to testify. She testified that, in January 2012, while she, M.C. and Jessica were in the kitchen at the Canfield's home in Bedford, Texas, M.C. told her that Appellant had touched her private parts. Jessica further testified that in a conversation that took place the next day, M.C. told her Appellant had touched her private parts with his hands, mouth, and private part and that M.C. stated she "had to touch [Appellant's] private parts with [her] hands and [her] body." During her testimony, Appellant's counsel never objected to the testimony concerning M.C.'s statements to her.

Ronda was the next witness to testify. During her direct examination, she too testified concerning the conversation that took place in the kitchen of her home. Ronda testified that during that conversation M.C. told her Appellant touched her private parts. She also stated that M.C. told her it happened when she was in the downstairs bedroom

---

[3] Jessica Canfield and Jessica Canfield Killion are the same person. At the time of her original statement to the police she used her maiden name.

[4] The State filed a more detailed description of Lindsey Dula's testimony on March 19, 2013, pursuant to a notice entitled *Notice of Outcry Supplement Pursuant to Article 38.072 CCP.*

in Bedford and that it also happened in a room in Tennessee. Ronda testified that, at that point, she asked her husband to come into the kitchen and she asked M.C. to tell him what she had just told her. When Michael and M.C. began to talk, she and Jessica left the room to take care of M.C's brother. During Ronda's testimony, Appellant's counsel never objected to the testimony concerning M.C.'s statements to her.

Michael was the third witness. During both direct and cross-examination, Michael testified that, in January 2012, M.C. told him her father kissed her private parts and touched his private parts to her private parts. As with Jessica and Ronda, during Michael's testimony before the jury, Appellant's counsel never objected to any testimony concerning M.C.'s statements to him.[5]

After a Bedford Police Department detective testified, the State called Lindsey Dula, the director of program services at Alliance for Children. Lindsey, a child abuse forensic examiner, interviewed M.C. concerning the allegations of abuse she had disclosed to Jessica, Ronda, and Michael. Lindsey described M.C.'s statements to

---

[5] In a pretrial article 38.072 hearing conducted immediately prior to the jury being seated, Michael testified concerning the statements made to him by M.C. At that time, Appellant's counsel made the following objection:

> I would agree that some of the things that Jessica has said may have differed slightly from what [M.C.] had told Ronda, especially the second time. However, I think what she told Mike Canfield is identical to what she had told Jessica and Ronda at the earlier time. Therefore, I would object to Mike Canfield being an outcry witness because none of the outcries were any different from what she told to Ronda and Jessica earlier. So I would object to Mike as an outcry witness.

After some discussion, without expressly ruling on the objection, the trial court stated, "Now, with respect to [the State] calling both Ronda and Mike as an outcry witness, I'm a bit concerned there, so I probably will just allow one."

those witnesses as a "rolling outcry."[6] She testified M.C. told her that Appellant touched her private parts and put his private part into her private part more than once. She also testified that M.C. told her these incidents occurred in an apartment in Tennessee and at Aunt Ronda's house. According to Lindsey's testimony, M.C. also demonstrated the position she would be in when Appellant would enter her anus and that M.C. indicated she and Appellant had vaginal and anal sex multiple times. M.C. also indicated to Lindsey that when Appellant put his mouth on her vagina, he would penetrate her vagina with his tongue. M.C. also told Lindsey Appellant would show her adult sexual organs on his computer.

Prior to this testimony being given, in an article 38.072 hearing conducted outside the presence of the jury, Appellant made the following objection concerning M.C.'s statements to Lindsey:

> My understanding of the outcry statements given by Ms. Dula are duplicative of the outcry statements that have already been elicited from Jessica and from Ronda and also the statements given by Mike, so we would object.

The trial court overruled the objection.

Araceli Desmarais, a Sexual Assault Nurse Examiner, was the next witness. She testified M.C. told her that Appellant touched her private part with his private part. M.C. indicated that, when this took place, she was not wearing her pants or underwear and Appellant had removed his pants and boxers. According to M.C.'s statement, this type of encounter occurred multiple times in Tennessee and in Bedford. M.C. also indicated

---

[6] Lindsey described a "rolling outcry" as multiple instances where a child would describe only part of the sexual abuse awaiting a reaction from the listeners. If the listeners did not react negatively and the child felt safe, the child would reveal additional instances and/or more detail of abuse.

that her father showed her adult sexual organs on his computer. She told Araceli that Appellant performed oral sex on her and made her touch his private parts more than once at the Canfield home in Bedford. M.C. also indicated there was pain when Appellant penetrated her private part. Appellant's counsel did not object to Araceli's testimony.

M.C. was the State's final witness. M.C. testified her father touched her private parts when they lived in Tennessee and that he also touched his private part to her private part when she was living in Bedford. She testified that when he touched her with his private part, sometimes she was on her stomach and other times on her back. She did not have any panties on and her father was not wearing any pants or underwear. She indicated that when her father was on top of her and she was on her tummy, it hurt. She also indicated her father made noises and something came out of his private part.

Following M.C.'s testimony, the State rested. The defense then rested without calling any additional witnesses. Thereafter, the jury convicted Appellant of continuous sexual assault and, at the conclusion of the punishment phase of trial, assessed his punishment at fifty years confinement. This appeal followed.

ARTICLE 38.072—OUTCRY STATEMENTS

Hearsay is generally inadmissible. TEX. R. EVID. 802. However, article 38.072 creates a statutory hearsay exception for a child-complainant's out-of-court outcry statement in the prosecution of certain sexually related offenses if, in relevant part, (1) the statement describes the alleged offense; (2) committed by the defendant against a

6

child who is younger than fourteen years of age; (3) where the statement was made to the first person who was eighteen years old or older, other than the defendant, that the child spoke to about the offense; (4) the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement," and (5) the child testifies or is available to testify at trial. Art. 38.072, § 2. Continuous sexual assault of a child, the offense at issue in this case, is Chapter 21 sexual offense covered by article 38.072. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014); Art. 38.072, § 1(1). The child-victim's statements must describe the alleged offense in some discernable way such that the outcry is "more than words which give a general allusion that something in the area of child abuse is going on . . . ." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

Furthermore, outcry witness testimony is event-specific, not person-specific. *Lopez v.* State, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). That is, where more than one offense is being prosecuted, there may be more than one outcry statement and more than one outcry witness. *Robinett v.* State, 383 S.W.3d 758, 761-62 (Tex. App.— Amarillo 2012, no pet.). In such situations, each outcry statement must meet the requirements of article 38.072, and because designation of the proper outcry witness is event-specific, the outcry statements related by different witnesses must concern different events and not simply be the repetition of the same event told by the victim at different times to different individuals. *See Lopez,* 343 S.W.3d at 140 (stating "[t]here may be only one outcry witness per event"); *Robinett,* 383 S.W.3d at 762; *Solis v. State,* No. 02-12-00529-CR, 2014 Tex. App. LEXIS 4493, at *11 (Tex. App.—Fort Worth April 24, 2014, no pet.) (mem. op., not designated for publication). Where, as here, the

7

prosecution of the singular offense of continuous sexual assault involves establishing the commission of "two or more acts of sexual abuse," committed "during a period that is thirty or more days in duration," there may be an outcry statement as to each act of sexual abuse and, therefore, more than one outcry witness as to that particular offense.

Additionally, the hearsay exception provided by article 38.072 applies only if the statute's stringent procedural requirements are met. *Garcia*, 792 S.W.2d at 91. In order to invoke the statutory exception, the party intending to offer the statement must notify the adverse party of the name of the witness through whom it intends to offer the statement and provide a written summary of the statement. *See* Art. 38.072, § 2(b)(1). The statute's explicit content and procedural requirements are mandatory, even though they may at times result in admission of a less detailed statement from the child. *Id.*

STANDARD OF REVIEW

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard of review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g.). Under that standard, the appellate court will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* at 380. This Court should uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

ISSUES ONE AND TWO

By his first two issues, Appellant asserts the trial court erroneously permitted Jessica and Ronda to testify as outcry witnesses because M.C.'s statements to them did not qualify as outcry statements. Specifically, Appellant contends M.C.'s statements to Jessica were vague and Ronda's testimony was redundant of Jessica's earlier testimony. The State contends Appellant waived these complaints by failing to contemporaneously object to their testimony.

In general, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection or motion. *See* TEX. R. APP. P. 33.1(a). That request, objection or motion must state the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *Id.*

Here, Appellants did not object to the testimony of Jessica or Ronda on the basis that they were not qualified outcry witnesses. Accordingly, the trial court was never afforded the opportunity to consider the complaints Appellant now raises before ruling on the admissibility of their testimony. Because Appellant failed to raise these issues in the trial court below, any error in admitting their testimony was not preserved for our review. *Wilson v. State,* 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g.) (reviewing court should not address the merits of an issue that has not been preserved for appeal). As such, these issues have been forfeited. *Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012). Appellant's first and second issues are overruled.

9

By his third issue, Appellant contends the trial court erroneously allowed Michael to testify to M.C.'s hearsay statements because that testimony was redundant of the testimony given by both Jessica and Ronda. The State responds to this argument by contending Appellant's complaint on appeal does not comport to his objection at trial; or, alternatively, his testimony is admissible because it describes a different event.

As to Michael's testimony, although an objection was made during the article 38.072 hearing concerning the redundancy of this testimony, Appellant never obtained a ruling with respect to that objection. Because the trial court did not rule on the objection, Appellant did not preserve error as to the introduction of Michael's testimony concerning M.C.'s outcry statements. *See* TEX. R. APP. P. 33.1(a)(2). As such, Appellant's third issue is overruled.

Alternatively, because the trial court allowed Michael to testify to matters Appellant appeared to be objecting to during the article 38.072 hearing, it can be argued the trial court implicitly overruled that objection. *See* TEX. R. APP. P. 33.1(a)(2)(A). Assuming the trial court did implicitly overrule Appellant's objection, thereby preserving error, the State alternatively contends Michael's testimony is admissible because it describes a different event. Specifically, Appellant's objection at the article 38.072 hearing was as follows:

> I think what [M.C.] told Mike Canfield is identical to what she had told Jessica and Ronda at the earlier time. Therefore, I would object to Mike Canfield being an outcry witness because none of the outcries were any different from what she told to Ronda and Jessica earlier.

This objection refers to the statements M.C. made to Ronda and Jessica in the kitchen on the first day. Those statements were to the effect that Appellant had merely touched her private parts. In that statement, M.C. did not say anything about Appellant having kissed her private parts or touched his private parts to her private parts. Although the differentiation between the two events is not the model of clarity, because the statements describe two different event-specific offenses, we find the complaint being raised on appeal is not the same as the complaint asserted at trial. *See* TEX. R. APP. P. 33.1(a)(1); *Knox v. State,* 934 S.W.2d 678, 687 (Tex. Crim. App. 1996) (finding nothing preserved for review if objection at trial does not comport with issue on appeal). Therefore, even assuming Appellant preserved error by his objection, that error fails because it does not conform to the complaint now being raised on appeal. For this additional reason, Appellant's third issue is overruled.

ISSUE FOUR

Finally, Appellant asserts the trial court erred by permitting Lindsey to testify to statements by M.C. that were repetitive of statements testified to by the other outcry witnesses. Assuming, without deciding, the trial court committed error in admitting Lindsey's testimony, we must conduct a harm analysis to determine whether that error affected Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). We review this error as nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Anderson v. State,*

11

717 S.W.2d 622, 627-28 (Tex. Crim. App. 1986). Without objection, both M.C. and Araceli, the nurse examiner, testified at trial. Both of these witnesses provided substantially the same account of the offense as Lindsey provided in her testimony. Thus, examining the record as a whole, we conclude that error, if any, by the trial court in admitting Lindsey's testimony about the offense did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no. pet). Because we conclude that the trial court's error, if any, was harmless, we overrule Appellant's fourth issue.

CONCLUSION

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.